## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-61499-CIV-ROSENBAUM

JOHN BENNETT,

       Petitioner,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

### <u>ORDER</u>

#### *Introduction*

    This matter is before the Court upon Petitioner John Bennett's Motion to Return Property and Various Additional Relief Including: (1) Disclosure of the Search Warrant Affidavit; and the Pleadings Demanding that it be Sealed; (2) Inspection of and Return of Seized Property; (3) Suppression of what was Seized in the Search; and (4) Disclosure and Suppression of the Coerced Custodial Interrogation of Dr. John Bennett ("Petition to Return Property) [D.E. 1].  The Court has carefully considered Bennett's Petition [D.E. 1], all supporting and opposing filings, and the record in this case.  In addition, the Court has conducted an *in camera* review of the search warrant affidavit and has held an evidentiary hearing.  After careful consideration and for the reasons that follow, the Court now denies each of Petitioner's requests, except that the Court lifts the seal on the Government's Motion to Seal filed in connection with its search-warrant materials.

#### *Background*

    On March 30, 2011, the Honorable Lurana S. Snow issued a search warrant authorizing the

Drug Enforcement Administration ("DEA") to search the Gulfstream Pain Center for evidence relating to violations of the Controlled Substances Act.  Petitioner Dr. John Bennett worked at the Gulfstream Pain Center, which operated as a pain clinic in Broward County but serviced patients from all over Florida and from outside the state.  D.E. 12 at 2.  The clinic was the subject of an undercover-DEA operation between May and July 2010, during which three undercover officers posing as patients made a total of twelve visits to the clinic.  *Id.*  According to the Government, during these visits, the agents either received or were prescribed approximately 1,792 oxycodone tablets and 252 Xanax tablets.  *Id.*  The Government characterized the affidavit supporting its application for the search warrant as setting forth the "full scope of the undercover officers' visits." *Id.*

Upon the Government's Motion, Judge Snow sealed the search-warrant affidavit and the Government's associated filings at the request of the Government.  The sealing order states that the affidavit is to remain sealed "until further order of the court."  *In re Sealed Warrant*, No. 11-6173-SNOW, Sealing Order, Sealed Document Tracking Form.

DEA agents executed the warrant at Gulfstream on April 1, 2011.  *Id.*  According to Petitioner, DEA agents engaged in a constitutionally impermissible "general search" of his pain clinic when they seized "2,648 patient files, 9 boxes of 'miscellaneous documents' and 13 bags containing more 'patient files and miscellaneous documents.'" D.E. 1 at 12.[1]  As a result of the search, Dr. Bennett contends, he was forced to shut down his medical practice, which remains closed

---

[1]The Government estimates that the total number of files seized is 3,400.  D.E. 12 at 13.

2

today.[2]  D.E. 1 at 12.

In response to these events, the Government's continued holding of the items that the DEA seized on April 1, 2011, and the lack of charges against Dr. Bennett or Gulfstream as of this date, Dr. Bennett filed his Petition to Return Property with this Court.  D.E. 1.  In his 56-page filing, Petitioner requests four actions of the Court: (1) unseal the search-warrant affidavit, as well as the Government's pleadings requesting that it be sealed; (2) order the Government to return all property it seized from Petitioner's pain-management clinic; (3) suppress all evidence seized from the Gulfstream Pain Center; and (4) order the Government to produce all statements Dr. Bennett made to Government agents during the search and then suppress those statements.  *Id*.  This Court held a hearing on Petitioner's Motion on May 23, 2012.

The Government retorts that "[t]he investigation into the conduct of Dr. Bennett and the clinic is ongoing" and argues that its delay in bringing charges "is reasonable given the period of time the clinic was operating, the number of patients serviced during that time, the large number of documents to review and analyze, and witnesses to locate."  D.E. 12 at 3, 13 n. 6.  In reply, Petitioner contends that the delay "proves, beyond a shadow of any doubt, the search was a 'fishing expedition.'"  D.E. 15 at 3.

*Discussion*

A.      **Motion to Unseal Search Warrant Materials**

The common law, the First Amendment, and, as recognized by some courts, the Fourth Amendment may all afford the public a right of access to court proceedings and judicial records.  In

---

[2]The Government points out that Dr. Bennett voluntarily gave up his DEA registration in June 2011.  D.E. 12 at 3.

his filings, Dr. Bennett argues that all three grounds entitle him to access the sealed search-warrant affidavit in this case, as well as the Government's pleadings requesting that it be sealed.  *See* D.E. 1 at 28-30; D.E. 15 at 2, 5-7.  Petitioner emphasizes his right to these materials under the Fourth Amendment in particular, which Dr. Bennett contends affords him "a Constitutional right to see the affidavit to determine whether, in truth and in fact, it satisfied the Fourth Amendment's mandate."  D.E. 15 at 2.  Although he has not seen the affidavit, Petitioner posits that the affiant must have omitted or misrepresented several material facts that, had they been revealed to Judge Snow at the time she considered the application, would have resulted in her not issuing the search warrant.[3]  Petitioner also argues that the Government has not offered a "compelling reason" that would justify keeping the affidavit under seal.  D.E. 15 at 5.  Rather, Dr. Bennett opines, the Government "would suffer no prejudice [if the affidavit were unsealed] as the search was completed more than two years ago, there is no unknown informant that ever needed 'protected,' all undercover agents are known . . . and there is no evidence that an investigation is underway."  D.E. 16 at 2.

    The Government responds that the search-warrant affidavit should remain sealed since the Government "has a compelling interest in protecting its ongoing investigation into the Gulfstream Pain Center," and this interest outweighs Dr. Bennett's interest in disclosure.  D.E. 12 at 1.  In support of its contention, the Government describes the affidavit as

---

[3] Dr. Bennett explains that he bases this assertion on his review of the undercover agents' patient files.  According to Dr. Bennett, "Based on conversations with the prosecutor in this case, the entire basis for probable cause for the warrant consisted of the three undercover agents . . . who were rightly and legitimately treated for what ailed them (back pain) and thus what they have to say, alleging misconduct, is false and misleading and fails to articulate probable cause for any search of the Gulfstream Pain Clinic [sic]."  D.E. 1 at 28.  Petitioner further claims that the "affidavit almost certainly did not specify that [undercover agent] patients A, D, G, and W were receiving pain medication that their symptoms didn't justify."  D.E. 15 at 3.

4

> includ[ing] information on the subjects of the government's
> investigation of the clinic; it includes the scope and direction of this
> investigation (that is, what occurred at the clinic while the
> undercovers officers were present and what observations they made
> over and above their interaction with Bennett); and the affidavit
> identifies potential witnesses and/or co-defendants (patients and staff)
> in the case and what they did and said.

*Id*. at 6.  Unsealing the affidavit, therefore, the Government concludes, "will impact the integrity of

[the Government's] ongoing investigation."  *Id.*

      1.    *First Amendment Right of Access to the Affidavit*

      The United States Supreme Court and the Eleventh Circuit have consistently recognized that

the public and press have a presumptive, yet qualified, First Amendment right of access to judicial

proceedings in criminal matters.  *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

573 (1980) (plurality opinion) ("[A] presumption of openness inheres in the very nature of a criminal

trial under our system of justice"); *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1569 (11th Cir.

1985) (finding *Richmond Newspapers, Inc.* "held that implicit in the First Amendment is the

constitutional right to attend criminal trials").  Whether a First Amendment right of access to judicial

*documents* in criminal matters exists, however, remains an open question.  The Supreme Court's

only explicit pronouncement on the right of access to judicial documents was couched in terms of

the common-law right of access: "[T]he courts of this country recognize a general right to inspect

and copy public records and documents, including judicial records and documents."  *Nixon v.*

*Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

      Most courts, including the Eleventh Circuit, have found a qualified First Amendment right

of access to court documents.  *See Brown v. Advantage Engineering*, 960 F.2d 1013, 1015-16 (11th

Cir. 1992) (applying the First Amendment "compelling interest" standard to determine whether the

petitioner had a right to access judicial records openly submitted in district court that were subsequently sealed pursuant to a court-monitored settlement); *see also In re Four Search Warrants*, 945 F. Supp. 1563, 1565-66 (N.D. Ga. 1996) (providing an overview of Eleventh Circuit case law on the issue of access to judicial documents); *but see United States v. Kooistra*, 796 F.2d 1390, 1391 n.1 (11th Cir. 1986) ("Although the constitutional and common law rights may differ in some respects, we have applied the [common law] standards of [*Graddick v.*] *Newman* to the right to inspect court records and documents other than trial exhibits.").

But this Court has found no Eleventh Circuit decisions addressing whether a First Amendment right of access extends to sealed search-warrant affidavits, particularly at the pre-indictment stage. Other circuit courts that have considered the issue are split, with most courts either rejecting or avoiding the argument. *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989 (holding that the public does not have "a qualified [First Amendment] right of access to inspect and copy affidavits supporting search warrants in the interval between execution of the warrants and indictment"); *Times Mirror Co. v. United States*, 873, F.2d 1210, 1211 (9th Cir. 1989) (finding no right of access to search warrant affidavits, under either the First Amendment or the common law, "while a pre-indictment investigation is underway"); *In re Application of Newsday, Inc.*, 865 F.2d 74 (2d Cir. 1990) (finding a common-law right of access while not reaching the constitutional issue, albeit post-indictment and post-plea); *but see In re Search Warrant for Secretarial Area-Gunn*, 855 F.2d 569, 572-74 (8th Cir. 1988) (finding a First Amendment right of access to search-warrant materials at the pre-indictment stage).

The Court need not decide whether a First Amendment right of access to sealed search-warrant affidavits exists at the pre-indictment stage because, even assuming that it does, the

Government has demonstrated a compelling interest that justifies continued sealing of the affidavit. As the Supreme Court explained, if a First Amendment right of access exists, the court can deny access only if a "compelling government interest" in closure exists and denial of access is "narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

In the Eleventh Circuit, potential prejudice to an ongoing criminal investigation represents a compelling government interest that justifies the closure of judicial records. *United States v. Valenti*, 986 F.2d 708 (11th Cir.), *cert. denied*, 510 U.S. 907 (1996) (affirming the district court's denial of appellant newspaper's motion to unseal court records related to a criminal indictment based on the trial court's finding that the government's interest in protecting its ongoing law-enforcement investigation was a compelling one that outweighed appellant's claimed right of access); *see also Search Warrant for Secretarial Area-Gunn*, 855 F.2d at 574 ("The government has demonstrated that restricting public access [under the First Amendment] to these [search-warrant affidavit] documents is necessitated by a compelling government interest—the on-going investigation. These documents describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved. . . .   There is a substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released.").

The Government in this case asserts that unsealing the search-warrant affidavit would "impact the integrity of [the Government's] ongoing investigation" because it would disclose "information on the subjects of the government's investigation of the clinic . . . [and] the scope and direction of this investigation (that is, what occurred at the clinic while the undercover officers were present and what observations they made over and above their interaction with Bennett)."  D.E. 12

7

at 6.  The affidavit also "identifies potential witnesses and/or co-defendants (patients and staff)" who may currently be unaware of the Government's investigation into the Gulfstream Pain Center.  *Id.* Such persons, the Government argued at the evidentiary hearing, might be tempted to destroy evidence, tamper with witnesses, or even flee if the search-warrant affidavit were publicly disclosed.

Having closely reviewed the affidavit in light of these specific assertions, the Court finds that the Government's concerns are legitimate and that protecting its ongoing investigation of Dr. Bennett and the Gulfstream Pain Center constitutes a compelling interest justifying continued sealing. Therefore, at this pre-indictment stage, the Government's interest outweighs any presumption of access Petitioner may have to the search-warrant affidavit under the First Amendment.

2.      *Fourth Amendment Right of Access to the Affidavit*

Petitioner also asserts that he has a pre-indictment right to access the search-warrant affidavit pursuant to the Fourth Amendment.  D.E. 15 at 5 ("An aggrieved person is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after a search has been conducted."). Although the Eleventh Circuit has not considered whether such a right exists, decisions from federal courts in other circuits recognize that, rooted in the Fourth Amendment, targets of a search warrant have a pre-indictment right of access to search-warrant materials.  *See, e.g., In re Search of Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996) ("a person whose property has been seized pursuant to a search warrant has a [pre-indictment] right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued"); *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 591 (D. Md. 2004) (recognizing "a search subject's pre-indictment Fourth Amendment right to inspect the probable cause affidavit"); *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) ("the Fourth

8

Amendment right to be free of unreasonable searches and seizures includes the right to examine the affidavit that supports a warrant after the search has been conducted and a return has been filed with the Clerk of the Court pursuant to Fed. R. Crim. P. 41"). As the *Up North Plastics* Court explained, "The power to seal court records is necessarily limited by the Constitution," and "the Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge the lawfulness of that search." 940 F. Supp. at 231, 232-33.

On the other hand, at least one circuit has rejected the argument that the Fourth Amendment provides a right of access to search-warrant affidavits at the pre-indictment stage. *See In re EyeCare Physicians of America*, 100 F.3d 514, 517 (7th Cir. 1996) ("[N]o provision of the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment. We are convinced that a proper reading of Rule 41(g) does not include a constitutional right of access to sealed warrant affidavits, but rather provides an administrative framework for the exercise of the common law right of access.").

Assuming without deciding that Petitioner does have a pre-indictment right of access to the search-warrant affidavit based on the Fourth Amendment, that does not end the inquiry. The courts that have found that the Fourth Amendnment grants a right of access to search-warrant affidavits have also held that this right is not absolute. Rather, it is qualified and may be limited or completely denied "upon a showing of a compelling government interest that cannot be accommodated by some means less restrictive than sealing the court's records." *Up North Plastics*, 940 F. Supp. at 230; *see also Search Warrants Issued August 29, 1994*, 889 F. Supp. at 229 (adopting a compelling interest plus no less-restrictive-means standard for limiting the right of access to search-warrant materials under the Fourth Amendment).

Here, as under the First Amendment analysis, the Government's interest in protecting the integrity of its ongoing criminal investigation is constitutionally compelling, and, after careful review of the warrant materials, the Court again concludes that unsealing the warrant materials at this time would unjustifiably compromise that interest. Petitioner's request to access the affidavit under the Fourth Amendment is, therefore, denied.[4]

3.     *Common-Law Right of Access to the Affidavit*

Both the Supreme Court and the Eleventh Circuit "recogniz[e] the presumptive common law

---

[4] Petitioner also asserts that he has a constitutional right of access to the affidavit pursuant to the due-process clause of the Fifth Amendment. *See* D.E. 15 at 5 (claiming that the Government's Response "unfairly depreciates case authority presuming access to the court records of an aggrieved party under the First, Fourth and Fifth Amendments . . . ."). Petitioner, however, did not provide any case law to support his claim that the Fifth Amendment affords a right of access to sealed search-warrant affidavits, and the only published federal case that this Court has found supporting Petitioner's argument is the brief decision of *In re Wag-Aero, Inc.*, 796 F. Supp. 394 (E.D. Wis. 1992), in which the court unsealed the search-warrant affidavit after finding that "the harm to the United States of disclosure at this time is significantly outweighed by the injury to [movant's] due process rights flowing from nondisclosure." The *Wag-Aero* decision, however, has been sharply criticized by at least one circuit court. In *EyeCare Physicians of America*, the Seventh Circuit described the due-process portion of the opinion as "barren of any analysis." 100 F.3d at 516. With similar force, the court also rejected the *EyeCare* movant's claim that the Fifth Amendment affords a pre-indictment right of access to search-warrant affidavits, stating that such an "argument . . . falls on deaf ears." *Id*. In reaching this conclusion, the court reasoned, "If preindictment disclosure of sealed warrant affidavits was required to satisfy due process . . . the hands of law enforcement would be needlessly tied and investigations of criminal activity would be made unduly difficult if not impossible." *Id*.

At the evidentiary hearing, the Court inquired of counsel for Dr. Bennett as to whether and how the constitutional test for access would operate under the Fifth Amendment, as opposed to either the First or Fourth Amendment. Counsel did not argue that the Court's calculus would differ under the Due Process Clause from its analysis under the other two amendments. In light of the dearth of case law on this subject, the Court assumes without deciding that the framework used to determine whether a party has a right of access to judicial records under the First or Fourth Amendment would also apply to an analysis under the Fifth Amendment — or at least that any Fifth Amendment framework would be no more stringent than that applicable to the First or Fourth Amendments. Accordingly, the Court also denies Petitioner's Fifth Amendment request for access to the affidavit because, as discussed elsewhere in this Order, the Government has presented a constitutionally compelling reason for continued sealing.

right to inspect and copy judicial records." *United States v. Rosenthal*, 763 F.2d 1291, 1292-93 (11th Cir. 1995); *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). Although this common-law right creates a strong presumption of access, "the right to inspect and copy is not absolute." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (citing *Nixon*, 435 U.S. at 597).

The right of access to judicial records may be overcome by a showing of "good cause," which requires the trial court to "balance the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007). As the Eleventh Circuit explained in *Romero v. Drummond Co., Inc.*,

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of likelihood of injury if made public, the reliability of the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Id*. at 1246; *see also Chicago Tribune*, 263 F.3d at 1311 (". . . a judge's exercise of discretion in deciding whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to . . . [the] production [of the particular document in question].'") (quoting *Nixon*, 435 U.S. at 603). The balancing of these factors is left to the discretion of the trial court. *Rosenthal*, 763 F.2d at 1295 ("The proper balancing of the foregoing factors is a matter which is vested in the first instance in the sound discretion of the trial court.").

Neither the Supreme Court nor the Eleventh Circuit has addressed the issue of whether the

common-law right of access to judicial records extends to sealed search-warrant affidavits, particularly where, as here, that right is asserted at the pre-indictment stage.  Several district courts in this Circuit, however, have issued opinions on this question.  *See, e.g., In re Macon Telegraph Pub. Co.*, 900 F. Supp. 489 (M.D. Ga. 1995); *In re Four Search Warrants*, 945 F. Supp. 1563 (N.D. Ga. 1996); *In re Search of Office Suites for World and Islam Studies*, 925 F. Supp. 738 (M.D. Fla. 1996); *United States v. Peterson*, 627 F. Supp. 2d (M.D. Ga. 2008).

In each of these cases, the court, either explicitly or implicitly, recognized that the common-law right to inspect judicial records applies where the record at issue is a sealed search-warrant affidavit.  *See, e.g., In re Four Search Warrants*, 945 F. Supp. at 1567 ("this court does find that the common law right to inspect and copy judicial records and documents applies to the present [sealed search-warrant affidavit] case."); *In re Macon Telegraph*, 800 F. Supp. at 492 ("Despite the absence of a First Amendment right [of access to search-warrant affidavits], the common law right of access still remains.").  The courts in these cases also applied the general Eleventh Circuit common-law "balance of interests" approach to determine whether access to the search-warrant affidavit should be granted in light of the particular facts of the case at bar.  *See, e.g., In re Office Suites*, 925 F. Supp. at 742 ("When deciding whether to grant a party's motion to seal or conversely the granting of a party's motion to unseal, the court is required to balance the historical presumption of access against any competing interest.") (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)); *In re Four Search Warrants*, 945 F. Supp. at 1567-68 (noting that "a district court must balance the presumptive right of access against important competing interests" and then weighing the Government's asserted reasons for continued sealing against Petitioner's interest in access).

Assuming without deciding that the common-law right of access to judicial records extends

to sealed search-warrant affidavits at the pre-indictment stage, the Court declines to grant Dr. Bennett such access in this case.  The Court has considered the interests in access asserted by Petitioner, namely his need to view the search-warrant affidavit in order to challenge its constitutional sufficiency. *See* D.E. 1 at 29 ("As the Government has sought to seal the affidavit in support of the search warrant . . . , Movant suffers the obvious disadvantage in challenging the contents and sufficiency of that sealed affidavit.").  As discussed previously, however, the Government has demonstrated to the satisfaction of this Court that a compelling need exists to keep the search-warrant affidavit under seal in this case.  And, this Court's review of the search-warrant affidavit does not reveal any obvious omitted or untruthful material statements, contrary to Petitioner's hypothesis.  Balanced against Petitioner's interests, particularly under these circumstances and at this pre-indictment stage, the Government's need for continued sealing of the affidavit outweighs the common-law presumption of access in this case.  Therefore, the affidavit shall remain under seal until further order of the Court.

       4.    *Less Restrictive Alternatives to Sealing*

As both First and Fourth Amendment right-of-access analyses require, the Court has considered less restrictive alternatives to maintaining a complete seal of the affidavit and finds that line-by-line redaction is not practical in this case.  The Government's justifications for keeping the affidavit under seal are not limited to concerns about disclosing the identities of undercover agents who posed as patients (although such concerns are certainly compelling reasons for closure).  Were that the only risk posed by unsealing the affidavit, this case would likely be one where redaction could provide an alternative to complete sealing while still accommodating the Government's compelling interest in closure.

Here, however, there is the additional concern that releasing the affidavit would reveal the identities of patients and employees of the Gulfstream Pain Center.  Given the detailed context in which these persons and their actions at the clinic are discussed in the affidavit, the Court finds that redaction of names and other identifying information would not adequately protect the Government's need for closure.  Thus, maintaining a complete seal on the search-warrant affidavit in this case is necessary to safeguard the Government's compelling interest in protecting its ongoing criminal investigation.

     5.    *Right of Access to the Government's Pleadings that the Affidavit be Sealed*

In addition to the affidavit, Petitioner has also requested that the Court unseal any materials that the Government submitted to Judge Snow in support of its argument that the affidavit should be sealed in the first instance.  The Government did not address this issue in its filings, and the Government has since elaborated on its more general statement supporting its Motion to Seal, effectively revealing everything in its Motion to Seal and more.  As a result, unsealing the Motion to Seal will not compromise the Government's compelling interest in protecting its ongoing criminal investigation.  Under these circumstances, the Court finds no reason to keep the Motion to Seal sealed at this time.

14

B.      **Return of Property Pursuant to Rule 41(g)**[5]

At the evidentiary hearing on May 23, 2013, the Government informed this Court, as well as Petitioner, that the Government would make available to Dr. Bennett for review and copying all files seized from the Gulfstream Pain Center.  The Government shall comply with its offer.

Still to be decided by the Court, however, is whether, should Petitioner desire copies of the records, the Government or Petitioner should bear the costs of such copying.  Rule 41(g) makes no provision regarding who should bear the costs of duplicating seized documents, nor has the Eleventh Circuit ruled on this specific issue.  Courts that have addressed this question, however, analogize to Federal Rule of Criminal Procedure 16.  *See Premises Known as 225, 1468 and 1470 Staller Towers v. United States*, 787 F.2d 796, 798 (2d Cir. 1986) (stating that Rule 16 "provides a useful analogy for solving the [Rule 41(g) copying] costs issue").  While Rule 16 governs criminal discovery and not pre-indictment motions under Rule 41(g), this Court finds apt the analogy drawn by the Second Circuit.

The text of Rule 16(a)(1)(E) states in full,

> *Documents and Objects.* Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

---

[5] Rule 41 of the Federal Rules of Criminal Procedure was reorganized in 2002. Until that time, the motion-to-return provision was located under subdivision (e). It has now been re-designated Rule 41(g), without substantive change to the Rule. Accordingly, courts have applied case law concerning former Rule 41(e) to the current Rule 41(g). *See United States v. Garza*, 486 F. App'x 782, 784 n.3 (11th Cir. 2012) ("In 2002, Rule 41(e) was reclassified as Rule 41(g) with no substantive changes. Therefore, our earlier cases interpreting Rule 41(e) also apply to the new Rule 41(g)."); *see also* 3A Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice & Procedure: Criminal § 690 (4 ed. 2004) ("Courts recognize that case law interpreting former Rule 41(e) generally applies to current Rule 41(g).").

(i)      the item is material to preparing the defense;

(ii)     the government intends to use the item in its case-in-chief at trial; or

(iii)    the item was obtained from or belongs to the defendant.

In reviewing this rule, the Eleventh Circuit found the "express language contained in Rule 16 necessarily directs the conclusion that the rule does not require the government to copy or otherwise expend government funds in order to supply criminal defendants with their requested material. Rule 16 gives the defendants access to the documents should they desire to do so." *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir. 1982). The Court therefore concluded that "[w]here the defendant has in no way been prohibited from inspecting the particular documents and cannot demonstrate an undue hardship from this availability, he should not be permitted to transfer the cost of his discovery request to the government especially where . . . the defendants are not indigent." *Id*. at 1366-67. *See also United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) (noting that while the district court has discretion to order the government to provide duplicates of discovery materials, particularly where a defendant is indigent, the government generally "is not obligated to make copies of the items") (citing *Freedman*, 688 F.2d at 1366-67).

Petitioner in this case is not indigent, and he has identified no reason why it would be an "undue hardship" for him to bear the costs of duplicating the seized files. Accordingly, the Court finds that, should Petitioner elect to copy the seized materials, he must do so at his own expense.

**C.      Suppression of Seized Property Pursuant to Rule 41(g)**

Petitioner has also moved this Court, pursuant to Fed. R. Crim. P. 41(g), "to suppress the property that was seized [from the Gulfstream Pain Center], and to preclude its use as evidence in any proceeding, before any grand or petit jury." D.E. 1 at 2. The Government opposes Dr. Bennett's

16

request, contending that, after its amendment in 1989, Rule 41(g) is "no longer any legal basis for the defendant to request the suppression of evidence or its preclusion from the government's case at this [pre-indictment] stage." D.E. 12 at 9, n.4. While Dr. Bennett concedes that suppression no longer automatically results from a court order that property be returned, he argues that "suppression following the revision of Rule 41 require[s] a separate determination, but that determination was not precluded pre-indictment [by the 1989 amendments]." D.E. 15 at 9. Dr. Bennett, in other words, claims that suppression is still an option available to the Court under Rule 41(g).

    1.    *The Amendments to Rule 41(g)*

Current Rule 41(g) states, in pertinent part, as follows:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. . . . If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings.

Fed. R. Crim. P. 41(g) (2013).

Prior its amendment in 1989, however, Rule 41(g) (then denominated 41(e), as mentioned *supra*, n.1), permitted the return of property only when an illegal search and seizure had occurred. Additionally — and more important to this discussion — is the fact that the pre-1989 version of the rule required automatic suppression when property was ordered returned. Before its 1989 amendment, former Rule 41(e) provided, in pertinent part,

> A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. . . . *If the motion is granted the property shall be restored and it shall not be*

17

*admissible in evidence at any hearing or trial*.

Fed. R. Crim. P. 41(e) (1989) (emphasis added).

In 1989, the Advisory Committee to the Federal Rules of Criminal Procedure deleted the portion of the rule stating that where property was ordered returned, it also must be suppressed. As the Advisory Committee Notes explain, "The [1989] amendment deletes language dating from 1944 stating that evidence shall not be admissible at a hearing or trial if the court grants the motion to return property under 41(e). This language has not kept pace with the development of the exclusionary rule doctrine and is currently only confusing." Fed. R. Crim. P. 41(g) (Advisory Committee Notes to the 1989 amendments). The Committee Notes go on to explain that "Rule 41(e) is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if that evidence might have been unlawfully seized. . . . Thus the exclusionary provision is deleted, and the scope of the exclusionary rule is reserved for judicial decisions." *Id*.

In addition to deleting the exclusionary provision, the 1989 amendment changed Rule 41(e)'s language to state (as it still does) that where a court grants a motion to return property, "the court must return the property to the movant*, but may impose reasonable conditions to protect access to the property and its use in later proceedings*." Fed. R. Crim. P. 41(g) 2013 (emphasis added). This language was added by the Advisory Committee to "avoid[] an all or nothing approach whereby the government must either return records and make no copies or keep originals notwithstanding the hardship to their owner." Fed. R. Crim. P. 41(g) (Advisory Committee Notes to the 1989 amendments). As amended in 1989, "the rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders." *Id*.

2.      *Does Current Rule 41(g) Provide a Cause of Action for Pre-indictment Suppression?*

Although the 1989 amendments were intended to "avoid[] an all or nothing approach" under

former Rule 41(e), the Advisory Committee Notes do appear to contemplate the possibility that, in

certain circumstances, "equitable considerations might justify an order requiring the government to

return or destroy all copies of records that it has seized." *Id*.  In other words, while the rule's post-

amendment language does not mention pre-indictment suppression, the Advisory Committee Notes

seem to imply that the Rule 41(g) may still operate as a functional equivalent of a motion to suppress

prior to indictment. [6]

The Eleventh Circuit has not spoken on whether suppression is still available under Rule

41(g) after the rule's 1989 amendment.  Circuit Courts that have addressed the issue are divided,

with more Courts finding that the 1989 amendments did not foreclose the possibility that complete

suppression can ordered under the rule.  *See In re Grand Jury*, 635 F.3d 101, 105 (3rd Cir. 2011)

("While it is true that a Rule 41(g) motion no longer *necessarily* seeks suppression, this hardly means

that it is *impossible* for such a motion to seek suppression.") (emphasis in original); *In re Search of

Law Office, Residence, and Storage Unit*, 341 F.3d 404, 413 (5th Cir. 2003) (noting that "the

commentary to Rule 41(e) does not absolutely foreclose use of the rule to suppress evidence before

a grand jury"); *In re Warrant & Records Seized from 3273 Hubbard*, 961 F.2d 1241, 1244 (6th Cir.

1992) ("We disagree with [the 10th Circuit case] *Kitty's East* to the extent that it holds that our

analysis of whether the motion is for the return of property or seeking suppression of evidence is

---

[6] The rule continued to provide, even after the 1989 amendments, that if a motion for
return of property is made *post-indictment*, it is to be treated as a motion to suppress and must
therefore comply with the standards under Rule 12, Fed. R. Crim. P.  As a result of the 2002
Amendments to the Rules, however, this portion of Rule 41(e) was separately relettered as Rule
41(h).

19

foreclosed by this recent [1989] amendment [to Rule 41(e)]."); *Ramsden v. United States*, 2 F.3d 322, 327 n. 4 (9th Cir. 1993) ("Our decision does not rule out the possibility that callous disregard for a movant's constitutional rights may under some circumstances justify denying the government the right to retain copies of seized documents [under Rule 41(e)]."); *but see In re Search of the Office of Ken Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) ("The rule is directed at the precise situation before us — a seizure prior to the return of an indictment. . . . Rule 41(e), however, cannot be used to suppress evidence."); *In re Matter of Search of Kitty's East*, 905 F.2d 1367, 1370 (10th Cir. 1990) ("By amending the rule to preclude suppression as a de facto result of returning the property, the Court has made every Rule 41(e) motion into one solely for the return of property.  Illegality of a search for purposes of Rule 41(e) and the scope of the exclusionary rule have been separated by the 1989 amendments.") (citations omitted).

### 3.   *Application to Dr. Bennett's Motion*

This Court need not decide whether suppression is still available under 41(g).  Even assuming, *arguendo*, that such a cause of action exists, Petitioner has not demonstrated that he is entitled to have the seized evidence suppressed.

Where  no criminal proceedings are pending, either because an indictment has not been filed or because a criminal prosecution has terminated, a petition pursuant to Rule 41(g) has always been treated as a civil action in equity.  *See United States v. Dean*, 80 F.3d 1535, 1542 (11th Cir. 2005) ("Federal courts have developed the doctrine of 'equitable' or 'anomalous' jurisdiction to enable them to take jurisdiction over property in order to adjudicate 'actions for the return of unlawfully seized property even though no indictment has been returned and no criminal prosecution is yet in existence.'") (citation omitted); *see also United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005)

(noting that a motion under 41(g) "is a motion in equity, in which courts will determine all the equitable considerations in order to make a fair and just decision"); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) ("Rule 41(e), Fed. R. Crim. P., is 'a crystallization of a principle of equity jurisdiction.'") (citation omitted); *In re Southeastern Equipment Co. Search Warrant*, 746 F. Supp. 1563, 1572 (S.D. Ga. 1990) ("A motion under 41(e) has always been treated as one invoking the equity jurisdiction of the Court.  The Eleventh Circuit in particular has assumed jurisdiction over such motions in the form of requests under Rule 41(e) or simply through the Court's own inherent jurisdiction.").

The doctrine of equitable jurisdiction is based on federal courts' "well established supervisory authority over officers of the court."  *In re $67,470*, 901 F.2d 1540, 1544 (11th Cir. 1990).  And while the doctrine generally enables district courts to assume jurisdiction over seized property prior to indictment, the Eleventh Circuit has emphasized that "[t]he decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint.  Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *Id*. at 1544; *see also Hunsucker v. Phinney*, 497 F.2d 29, 33 (5th Cir. 1974) ("But even if the District Court's power over its officers provides a theoretical basis for jurisdiction in this case, it does not automatically follow that this unique power should be exercised wherever it exists.  Rather such jurisdiction should be exercised with 'caution and restraint,' and 'subject to equitable principles.'") (citations omitted)[7]; *In re Southeastern Equipment Co.*, 746 F. Supp. at 1572 ("Equitable jurisdiction is deemed to be 'extraordinary' and, thus, should not be exercised in every situation as to make such

---

[7] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1990), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

a jurisdiction ordinary.  This is especially so at the pre-indictment stage, where it is necessary to consider what interruption, if any, such an exercise would play on any ongoing investigations and proceedings.").  "In other words, [equitable] jurisdiction is appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice."  *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1990).

The former Fifth Circuit set forth four factors that, in additional to general principles of equity, should guide a district court's decision concerning whether to exercise equity jurisdiction before the initiation of criminal proceedings.  *See Richey v. Smith*, 515 F.2d 1239, 1243-44 (5th Cir. 1975) (holding that district courts have jurisdiction to entertain Rule 41(e) motions when no criminal proceedings are pending against the movant and that such motions are treated as civil equitable proceedings).  These factors include the following:  (1) whether the government "displayed a callous disregard for the constitutional rights" of the petitioner; (2) whether the petitioner has "an individual interest in and need for the property;" (3) whether the petitioner would be "irreparably injured" by denial of the relief requested; and (4) whether the petitioner "has an adequate remedy at law for the redress of his grievance."  *Id.*

Eleventh Circuit courts have continued to use the analytical framework provided by the *Richey* opinion in deciding whether equity jurisdiction is warranted in a given case.  *See e.g.*, *In re $67,470*, 901 F.2d at 1545 (listing the *Richey* factors as "the considerations that should guide the discretion of the district court in exercising equitable jurisdiction"); *United States v. Quezada*, 439 F. App'x 824, 827 (11th Cir. 2011) (stating that the four factors are "[t]he considerations that should guide the district court's exercise of equitable jurisdiction"); *In re Southeastern Equipment*, 746 F. Supp. at 1572-73 (analyzing the *Richey* factors to decide if exercising equitable jurisdiction was

justified where petitioner's Rule 41(e) motion was made pre-indictment but pending a grand-jury investigation).  As the Eleventh Circuit has explained, "enveloping all of these [*Richey*] factors are the basic equitable considerations of whether the petitioner's conduct and the merits of his position require judicial review to prevent manifest injustice."  *In re $67,470*, 901 F.2d at 1545.

The Court, having carefully considered Dr. Bennett's request for suppression with respect to both the *Richey* factors and also general principles of equity, finds that Petitioner has failed to satisfy the necessary prerequisites for the exercise of this Court's equitable jurisdiction.[8]  As a result, the Court does not reach the merits of Petitioner's request for suppression of the seized property at this time.

a.     Callous Disregard for Petitioner's Constitutional Rights

The first inquiry under *Richey* is whether the Government, in seizing property from the Gulfstream Pain Center, displayed a "callous disregard" for Petitioner's constitutional rights — that is, whether "there is a clear and definite showing that constitutional rights have been violated." *Hunsucker v. Phinney*, 497 F.2d at 34 n.10 (citations omitted); *Richey*, 515 F.2d at 1243.  Dr. Bennett has made no such showing at this time. An *in camera* review of the Application and Affidavit for the Search Warrant supports a finding that the Government has not displayed a callous disregard of the constitutional rights of Dr. Bennett.  The search warrant was based on a lengthy and detailed affidavit, and it was issued only after a neutral and detached judicial officer made a determination that it was supported by probable cause.  *See Hunsucker*, 497 F.2d at 35 (confirming

---

[8]Dr. Bennett has not specifically addressed how the circumstances of his case satisfy the *Richey* factors with respect to his request for suppression under 41(g).  Petitioner has, however, argued for their applicability with regard to his motion for the return of his property.  The Court, therefore, assumes that Dr. Bennett's discussion of the *Richey* factors in the return-of-property section of his Petition also applies to his request for suppression.

that petitioner's was not a case warranting the court's exercise of equitable jurisdiction because petitioner could not establish callous disregard of his constitutional rights where "the search in issue was conducted pursuant to a warrant issued in the normal manner"); see also 6 Wayne R. LaFave, *Search and Seizure* § 11.2(h) (5th ed. 2011) ("such [equitable] jurisdiction is not likely to be exercised where the search in issue was conducted pursuant to a warrant issued in the normal manner" (internal quotation marks and citations omitted)).  Further, Petitioner was provided a copy of the search warrant, as required by Rule 41(f)(1)(C), Fed. R. Crim. P. *See* D.E. 1, Exhibit A (copy of search warrant appended to Dr. Bennett's Petition for Return of Property).

The Court recognizes, however, that other circuit courts have found, even where the search was constitutional, that the Government's retention of the property for a significant amount of time without bringing charges may constitute "callous disregard."  *See, e.g.*, *Mr. Lucky Messenger Service, Inc., v. United States*, 587 F.2d 15, 17-18 (7th Cir. 1978) (rejecting the government's claim that since the property was seized pursuant to a valid search warrant it therefore was not made in callous disregard for movant's constitutional rights and stating instead that the government's withholding of $65,000 for seventeen months without bringing charges "may well involve callous disregard for constitutional rights"); *see also Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir. 1975) (holding that the government's retention of seized property without commencing some sort of proceeding would violate the Constitution if the delay took on "unreasonable proportions").

Here, while it is true that the Government has been in possession of Dr. Bennett's property for over two years without issuing an indictment, at this point in time, the Court finds that the Government's justifications for continued retention of Petitioner's property remain valid.  Given the volume of medical documents seized from the Gulfstream Pain Center, the need for each patient's

file to be reviewed and evaluated by a person with specialized medical knowledge, and the fact that the Government has agreed to allow Dr. Bennett access to the files, the Government's conduct — and specifically, the delay — does not evidence callous disregard for Dr. Bennett's constitutional rights.

The Court does note, however, that while a certain amount of time is necessary to review the seized materials, draft an indictment, and file criminal charges (if the Government elects to do so), that time is not unlimited.  At some point that has not yet been reached, the delay may become unreasonable and constitute callous disregard for Petitioner's rights.  *See In re Search of McCorkle*, 972 F. Supp. 1423, 1436 (M.D. Fla. 1997) (although generally denying motion for return of property, court, citing due-process concerns, ordered government to institute civil or criminal proceedings by an early date or return seized assets).  Accordingly, the Court urges the Government to use all deliberate speed to determine how it will resolve this investigation.

        b.     <u>Petitioner's Interest In and Need for the Property</u>

The second *Richey* factor requires consideration of whether Petitioner has "an individual interest in and need for the property." *Richey*, 515 F.2d at 1243.  Here, although Dr. Bennett certainly has an individual interest in the files seized from his own clinic, it is less clear whether he has a need for them, given that the Gulfstream Pain Center has not reopened since the search warrant was executed more than two years ago.  But even if he does, the Government has agreed to allow Petitioner to review and copy the materials seized from Dr. Bennett's office.  Thus, even if Petitioner could demonstrate a legitimate need for the records, such a need would be satisfied by having access to the files for review and duplication.

c.     Irreparable Injury to Petitioner

Turning to the third *Richey* factor, Dr. Bennett argues that he will face irreparable injury arising from the potential "stigma" of being improperly indicted if the Court does not order suppression.  *See* D.E. 1 at 42.  Petitioner cites to language quoted by the former Fifth Circuit in *Richey* that "a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted.  The stigma cannot be easily erased." *Richey*, 515 F.2d at 1243 n. 10) (quoting *In re Fried*, 161 F.2d 453 (2d Cir. 1947)).

When a Rule 41(e) motion is made before the initiation of criminal proceedings, "irreparable harm refers to circumstances in which a Rule 41(e) movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction."  *In re One 1983 Mercedez Automobile VIN No. WDBCB20A9DB041960*, 131 F.R.D. 199, 202 n. 4 (M.D. Ala. 1989) (citation omitted) (cited with approval by the Eleventh Circuit in *In re $67,470*, 901 F.2d 1540).  Petitioner is correct that the Former Fifth Circuit in *Richey* did seem to find that the threat of future prosecution may constitute irreparable harm, albeit in a footnote and possibly, strictly speaking, as non-binding *dicta*.  *Richey*, 515 F.2d at 1243 n. 10.[9]  Although other courts have rejected this line of thinking, to the extent that

---

[9] The Court notes, however, that the Fifth Circuit has since changed its view on this issue and has aligned itself with most other circuits that have considered it, ultimately finding that mere threat of indictment is insufficient to constitute irreparable harm.  *In re Search of Law Office, Residence & Storage Unit Alan Brown*, 341 F.3d 404, 415 (5th Cir. 2003) ("The 1989 amendments to Rule 41(e) and the Advisory Committee's notes on those amendments encourage courts to focus on the harmful effects the loss of the property wreaks on the movant.  Taking that nudge, we conclude that the irreparable harm which [movant] must have proven to prevail in the Rule 41(e) proceeding must have focused on the injury to [movant] from loss of the property, not simply harm from the grand jury's reliance on the illegally seized evidence in indicting him . . . .");  *see also In re Search of 4801 Flyer Ave.*, 879 F.2d 385 (8th Cir. 1989) ("if we were to allow the mere threat of future prosecution to constitute irreparable harm these [41(e)] procedures would not be extraordinary, but quite ordinary. Every potential defendant could point to the same harm.");  *In re Search of Premises Known as 6455 S. Yosemite, Englewood, Colo.*, 897 F.2d

this conclusion could be viewed as a necessary part of the holding of *Richey*, the *Richey* decision is

binding on this Court.  Thus, in the absence of countervailing case law from the Eleventh Circuit,

this Court errs on the side of Petitioner and finds that the third *Richey* factor could weigh in favor

of Dr. Bennett.

        d.      <u>No Adequate Remedy at Law</u>

      The final consideration under *Richey* is whether the petitioner "has an adequate remedy at

law for the redress of his grievance."  *Richey*, 515 F.2d at 1244.  Although Petitioner asserts that it

"must be self-evident, there is no remedy at law," the Court respectfully disagrees.  D.E. 1 at 42.

"An adequate remedy at law may exist even if it cannot be asserted currently, but rather only at some

future date."  *In re Stanford*, 68 F. Supp. 2d 1352, 1356 (N.D. Ga. 1999); *see also Hunsucker*, 497

---

1549, 1577 (10th Cir. 1990) ("We agree with the analysis of the Eighth Circuit in 4801 Flyer
Ave., and hold that the mere threat of imminent indictment does not establish irreparable injury
as required for a motion under Rule 41(e)."); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir.
1993) ("if the mere threat of prosecution were allowed to constitute irreparable harm [for
purposes of Rule 41(e)], every potential defendant could point to the same harm and invoke the
equitable powers of the district court. The district court's exercise of its equitable jurisdiction
would not be extraordinary, but instead quite ordinary.").

      Moreover, language from several Supreme Court decisions issued before *Richey*,
although not in the context of Rule 41(g), strongly suggests that any hardship associated with the
threat of indictment is not the type of "irreparable harm" that justifies a court's exercise of equity
jurisdiction.  *See Younger v. Harris*, 401 U.S. 37, 46 (1961) (holding, in the context of  federal
injunctions of state criminal proceedings, that "[c]ertain types of injury, in particular, the cost,
anxiety, and inconvenience of having to defend against a single criminal prosecution, could not
by themselves be considered 'irreparable' in the special legal sense of that term.  Instead, the
threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his
defense against a single criminal prosecution."); *Douglas v. Jeannette*, 319 U.S. 157, 163 (1943)
("It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions.  No
person is immune from prosecution in good faith for his alleged criminal acts.  Its imminence,
even though alleged to be in violation of constitutional guaranties, is not a ground for equity
relief since the lawfulness or constitutionality of the statute or ordinance on which the
prosecution is based may be determined as readily in the criminal case as in a suit for an
injunction.").

F.2d at 34 (holding that where, at the time of bringing a Rule 41(e) motion, "it appeared likely that a future proceeding would be available in which [movant] could vindicate his rights," there was an adequate remedy at law). Here, such a remedy exists: a motion to suppress under Rule 12, Fed. R. Crim. P., which Dr. Bennett may bring to contest the constitutionality of the search warrant, should he be indicted. Or, if charges are not forthcoming, Petitioner may reapply to this Court for the return of his property.

Thus, while one of the *Richey* factors (irreparable injury) may weigh in favor of Petitioner, the remaining three do not. Moreover, at this point in time, it does not appear that Dr. Bennett's is a case "requir[ing] judicial review to prevent manifest injustice," a finding that is required for this Court to exercise equity jurisdiction. *Eubanks*, 169 F.3d at 674 ("In other words, [equitable] jurisdiction is appropriate only when the petitioner's conduct and the merits of his petition require judicial review to prevent manifest injustice."). Accordingly, the Court declines to exercise equitable jurisdiction to review the merits of Dr. Bennett's request to suppress the evidence seized from the Gulfstream Pain Center.

**D.      Production and Suppression of Dr. Bennett's Statements**

In his final request, Petitioner asks this Court for "access to and to suppress as evidence Dr. Bennett's statements [to law enforcement agents during the search] and any evidence derived from those statements because Dr. Bennett was interrogated by government agents in a custodial setting without being afforded *Miranda* warnings and this interrogation occurred done [sic] despite counsel's objection to questioning by the agents." D.E. 1 at 50. In opposition, the Government argues that Dr. Bennett cites "no authority for the proposition that these statements may be challenged before criminal proceedings have been instituted. Indeed, under Rule 12, a criminal

proceedings [sic] requires a charging document, and a motion to suppress such a statement must be made before trial.  The petitioner's challenge as to his statements is, therefore, premature."  D.E. 12 at 12 n.5. (citation omitted).

Petitioner has presumably predicated jurisdiction on Rule 41(g), Fed. R. Crim. P., as he cites no other basis for the Court to exercise jurisdiction over this matter.  As discussed at length, *supra*, however, Rule 41(g) provides a mechanism by which an individual may recover and, perhaps, have suppressed property that the government has taken as evidence.  What Petitioner here is requesting is the production and suppression of statements that he allegedly made to law-enforcement officials; and he is making such a request prior to the filing of any criminal charges against him or involving the Gulfstream Pain Center.  Under these circumstances, the Court knows of no authority that would permit its jurisdiction over the request at issue.  Rather, it appears that this Court lacks jurisdiction to decide the merits of Dr. Bennett's request that his statements be disclosed and then suppressed because Petitioner has not satisfied the constitutional standard for ripeness.[10]

The issue of ripeness "concerns the timing of the suit," *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010), and "goes to whether the district court ha[s] subject matter jurisdiction to hear the case."  *Digital Props. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir.

---

[10] Dr. Bennett has not addressed the issue of ripeness with respect to his request for disclosure and suppression of his statements.  And, while the Government did argue in a footnote that Petitioner's request is "premature," it did not discuss the ripeness doctrine nor the two-prong test that applies under it.  D.E. 12 at 12 n.5.  Federal courts, however, are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004).  Since ripeness "goes to whether the district court ha[s] subject matter jurisdiction to hear the case," *Digital Properties*, 121 F.3d at 590, this Court "must investigate questions of subject matter jurisdiction, whether or not they are raised by the parties to the case," *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999) (citation omitted).

1997) (quoting *Greenbrier, Ltd., v. City of Alabaster*, 881 F.2d 1570, 1573 n. 7 (11th Cir. 1989)).

Its function is to "protect[] federal courts from engaging in speculation or wasting their resources

through the review of potential or abstract disputes.  The doctrine seeks to avoid entangling courts

in the hazards of premature adjudication." *Id.*  Moreover, the Eleventh Circuit "has recognized that

the ripeness doctrine not only protects courts from abusing their role within the government and

engaging in speculative decision making, but that it also protects the other branches from judicial

meddling." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).

The ripeness doctrine is based on both jurisdictional and prudential concerns. *Digital Props.*,

121 F.3d at 589.  From a constitutional standpoint, under Article III, federal jurisdiction extends to

only "cases" and "controversies" that are of "sufficient concreteness to evidence a ripeness for

review." *Id.* (citation omitted); *see also* U.S. Const. Art. III, § 2, Cl. 1.  But even when a matter

satisfies the minimum constitutional requirements, prudential considerations may still cause a court

to refrain from exercising jurisdiction.  *Id.*  To determine whether a claim is ripe, the Court must

consider "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of

withholding court consideration." *Id.* (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967),

*overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977)).  In other words, "[c]ourts

must resolve whether there is sufficient injury to meet Article III's requirement of a case or

controversy, and if so, whether the claim is sufficiently mature, and the issues sufficiently defined

and concrete, to permit effective decision making by the court." *Id.* (citation omitted).

Accordingly, the Court examines Petitioner's request for disclosure and suppression of his

statements with respect to both the "fitness of the issues" and also the "hardship to the parties of

withholding court consideration."  The fitness prong, which is more of a prudential constraint, is

30

"typically concerned with questions of 'finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2011) (citation omitted). As the Eleventh Circuit has stated, "[C]laims are less likely to be considered 'fit' for adjudication when they venture beyond purely legal issues." *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (citation omitted). Moreover, under the fitness analysis, "[a] claim is not ripe . . . if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Atlanta Gas Light Co. v. Federal Energy Regulatory Comm'n*, 140 F.3d 1392, 1404 (11th Cir. 2001) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The thrust of Dr. Bennett's argument appears to be that production and suppression of his statements is required because they would be inadmissible evidence in the Government's case in chief at trial. *See* D.E. 1 at 52. Petitioner's claim is not fit for judicial review at this time. Whether the Government will have an opportunity to introduce Dr. Bennett's statements at trial is contingent on a number of factors — first and foremost, whether Dr. Bennett will even be charged. It would be pure speculation on the part of this Court to assume that the Government will decide to bring some type of enforcement action involving Dr. Bennett, that it will present the matter to a grand jury, that the grand jury will return an indictment, that the case will be set for trial, and that the Government will want to introduce Dr. Bennett's statements in a manner that implicates Petitioner's constitutional rights. The Court is unwilling to travel down this hypothetical road at this very early stage. To do so would be to engage in the type of "speculative decision making" that the ripeness doctrine is intended to prevent. *See Nat'l Adver. Co.*, 402 F.3d at 1339.

Turning to the second part of the ripeness analysis, "[t]he hardship prong asks about the costs

to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Harrell*, 608 F.3d at 1258. The touchstone of this inquiry centers on whether "irremediable adverse consequences flow from requiring a later challenge." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967).

Dr. Bennett will face no such consequences if the Court does not resolve his suppression request at this juncture. Should Petitioner be indicted, he will certainly have an opportunity to present to the trial court any arguments for production and suppression of his statements pursuant to Rules 16 and 12, Fed. R. Crim. P., respectively. *See Pittmann*, 267 F.3d at 1281 (stating that hardship for ripeness purposes "is not likely to be present where a plaintiff 'will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain'") (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998)). Accordingly, Dr. Bennett will not suffer cognizable hardship as a result of this Court's declination to resolve his suppression request at this time. Because Petitioner's request is not fit for judicial review at this time and because Dr. Bennett will suffer no hardship as a result of this Court's withholding of judicial consideration, the suppression issue is not ripe for adjudication.

### *Conclusion*

For the foregoing reasons, Petitioner's Petition [D.E. 1] is **GRANTED IN PART and DENIED IN PART**, as set forth below:

1.   Petitioner's request that the search-warrant affidavit be unsealed is **DENIED**;

2.   Petitioner's request that Government pleadings associated with the sealing of the search warrant be unsealed is **DENIED IN PART and GRANTED IN PART**. The Government's Motion to Seal the Search Warrant Materials shall be **UNSEALED**,

32

but nothing else shall be unsealed.

3.      Petitioner's request, pursuant to Rule 41(g), for the return of his seized property is

**DENIED**;

4.      Petitioner's request for suppression of his seized property is **DENIED** without

prejudice to bring the motion again if he is charged with a crime;

5.      Petitioner's request that his statements made to law-enforcement officials during the

search be disclosed and then suppressed is **DENIED** without prejudice to bring the

motion again if he is charged with a crime; and

6.      The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 23rd day of July 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

33